## NORTHALL *v*. BERNARDIN.

PATENTS; PRIORITY OF INVENTON.

A decision of the Commissioner of Patents in an interference case, involving the priority of invention of a bottle-sealing cap, *reversed.*

No. 31. Patent Appeals. Submitted November 13, 1895. Decided January 6, 1896.

HEARING on an appeal from a decision of the Commissioner of Patents. *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. Wm. A. Fisher* and *Mr. Robert H. Parkinson* for the appellant.

*Mr. Benjamin Butterworth* and *Mr. Julian C. Dowell* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding involving the following issue:

"A metallic bottle-sealing cap having its lower edge adapted to be pressed into contact with a locking-shoulder, and provided above the said edge with a circumferential, outwardly-projecting rib or bead for engagement with the removing-tool."

There were three parties to the original proceeding— Alfred L. Bernardin, William H. Northall, and William Painter.

The primary examiner awarded priority of invention to Northall, and upon appeal to the examiners in chief the decision was affirmed. The appeal was then taken to the Commissioner, who reversed the examiner's decision and awarded priority to Bernardin. Northall alone has appealed from that decision, and the claim of Painter is therefore no longer matter of consideration.

Applications for patents were filed by the parties in the following order of time: Bernardin, July 21, 1892; Painter, January 16, 1893; Northall, March 31, 1893.

The record contains a great mass of conflicting evidence, from which we are to determine who is entitled to priority, or, rather, as between the two parties left to the controversy, who is the inventor, for one thing which is very plain from the record, is that as between Bernardin and Northall this is not a case of two independent inventors who, working in ignorance of each other's discoveries, have exploited the same idea.

Bernardin claims to have conceived the idea in February, 1892. He was then, and had for some years been, the president of the Bernardin Bottle Cap Company. In and

before 1891, this corporation, whose place of business was
Evansville, Ind., had been engaged in the manufacture of
bottle-sealing devices, the leading one of which consisted of
a tin cap for the mouth of the bottle, with a collar which
fastened about its neck and was connected by strips with
the cap.   In February, 1892, Bernardin learned of a cap
manufactured in Baltimore that was made in a single piece
and was much simpler than the one made by his company.
This was made to press down about the shoulder or rim of
the bottle neck, and its edges were corrugated, so as to
make a projecting edge or flange for its easy removal.   This
discovery alarmed Bernardin, and he began to consider im-
provements that might be made in such devices.    There is
no doubt that he considered two of these seriously and went
to Washington to apply for patents about April 16, 1892.
One was a cap with corrugated edges which were to fit
similar corrugations in a bottle made for the purpose, and
the other was made with perforations in which a tool could
be inserted for removal.    He was informed by his attorney
that these devices were probably not patentable.   They were
also expensive to make and did not sufficiently overcome
the difficulty of removal.    He was very much discouraged
and returned home.    The great object in view was a cap,
inexpensive to make, that would be a perfect seal and at the
same time easily removable without injury to the bottle.

Bernardin claims that he had also conceived the idea of
the cap in issue, with the bead or rim at the top, in Feb-
ruary, 1892, and had discussed it, as well as others,
with Northall, who was the superintendent of the machine
shop of the Bottle Cap Company.   He says that he made
a rough sketch of the one with the bead and that Northall
preferred it to the others ; but he (Bernardin) thought it
would be too expensive to make.    When he returned dis-
couraged the matter was taken up again, and he suggested
to Northall a simpler way of pressing on the bead or rim,
and directed him to make tools for the experiment.    Prov-
ing satisfactory, he had some of the caps made, and went

to Washington in July, 1892, and filed his application for a
patent.

Northall was a skilled mechanic and had been in the ser-
vice of the Bottle Cap Company for about eight years.   He
claims that the idea of making a cap with a bead was sug-
gested to him by the rim found on metallic cartridges, and
was matured on December 19, 1891, on which day he
made a drawing of the same, with a tool to be used in re-
moving it, and disclosed it to a number of persons.   He
admits that he knew of the two devices of Bernardin before
referred to and of his trip to Washington concerning pat-
ents for them, and says that before Bernardin's return he,
having no confidence in the efficacy of those inventions,
mentioned his own invention of the cap in issue to a fellow
workman and to the treasurer of the Bernardin Company.
These persons say that he did so, but that he referred to
his invention as having been made the night before.   He
also says that he showed his drawing to Bernardin on his
return, who was pleased with it and ordered the caps to be
made and tested, but afterward informed him that it was
not patentable.   In part explanation of his conduct in tak-
ing no steps himself to apply for a patent he claims to have
been too poor to undertake it and to have been willing for
the Bernardin Company to do so, expecting, however, to
have an interest in it.   He says that he was dependent upon
his position with the company, which paid him $100 per
month, and let the matter proceed until some time in
August, 1892, when he saw from copies of papers in the
Patent Office, shown him by Bernardin, that the application
was made in the latter's name.   He undertakes to explain
his subsequent inaction by the fear that he had of losing
his place, by his ignorance of the law in such matters
which caused him to think that he was too late, and, to
some slight extent, by hopes that he would be given an in-
terest in the new corporation forming and formed to exploit
the invention.   There are, too, some other circumstances
growing out of his connection with the Crown, Cork and

Seal Co., of Baltimore, assignee of Painter, and also holder
of an option upon his (Northall's) claim herein in the event
of his success, that tend in some degree to affect the in-
tegrity of his claim.

On the other hand, Bernardin's conduct is surrounded
by some circumstances that tend to impair the strength and
weight of his claim, notwithstanding the diligence with
which he has prosecuted it since April, 1892.   According
to his own statement he made no disclosure of his inven-
tion of the disputed cap to any one except Northall until
his return from Washington about the last of April, 1892.
It seems clear that he did not mention it to his Washington
attorneys, Munn & Co., when they discouraged him as re-
gards the patentability of the first two devices on which he
filed applications.   He has produced no sketch or drawing
made prior to the application for patent.   He undertakes
to account for the neglect of this invention by saying that
he had deemed it impracticable because of the difficulty
and expense that he apprehended in making the bead or
rim.

There is an irreconcilable conflict between the statements
of Bernardin on one side and of Northall on the other.
Fortunately it is not necessary to analyze these, weighing
circumstsnce against circumstance and setting off inference
against inference in order to determine which of them is
most entitled to belief.

In our opinion the case must turn upon the truth or
falsity of Northall's statement that he made the drawing,
which fully discloses this invention, on December 19, 1891.
If he made the drawing on that date he is the inventor.
He has produced a piece of paper, with the drawing on it,
with that date written upon it with a pencil.   He says that,
having been at work on the invention for some time, he
completed his plan and made the drawing on that day,
which was Saturday; that he went to the saloon of Frank
Haas after supper and engaged with several acquaintances
in a game of cards, as he had often done before; that he

lost each game and his companions began to make sport of
him, saying that he had lost his skill through having neg-
lected the game so long; that he said he had been working
at a thing that would make him rich, and asked for a piece
of paper to show them what he had been doing while ab-
sent.   There was no paper, but some one handed him a
cardboard " oyster sign " which Haas had over his lunch
counter, and, turning it over, he made a rough sketch on
the back of his bottle cap and tool for removing it.   This
statement is corroborated by Frank Haas, the saloon-
keeper; McDowell and Zeigler, draymen; Heidt, a school
janitor; Oslage, a grocer, and Wagner, a horseshoer, who
were all present.   These witnesses are all positive that it
occurred on Saturday night before Christmas—December
19, 1891—and account reasonably for their ability to fix
the precise date.   Haas said that he put the sign away at
the end of the oyster season, and found and produced it
after the controversy arose.   These witnesses appear to be
intelligent laboring and business men, and to have no pe-
cuniary interest in the result of the controversy.   They
had lived long in Evansville, were well known, and no wit-
ness was offered to impeach their credibility.   They have
either spoken the truth or been guilty of willful falsehood.
There is no room for mistake.

  Again, Northall is corroborated by two other intelligent,
disinterested and apparently truthful witnesses.   Henry B.
Polsdorfer, who is a manufacturer of washboards, wooden
ware, etc., and a trained mechanic, says that he knew
Northall well, and that they and their wives were intimate
friends.   Being interested in machinery and inventions, he
frequently conversed with Northall upon such subjects.
He says that Northall showed him his drawing of the bot-
tle cap in issue at his house in Evansville, and explained it
fully, " between the middle and latter part of December,
1891."   He recognized the drawing when produced, and
remembered that it had December on it, but did not re-
member the day of the month.   Mary E. Polsdorfer testi-

fied to hearing the conversation and seeing the drawing also. She remembered that it was just before Christmas, because ·she had gone to Mrs. Northall's to join her in making some slipper cases for presents, and her husband had gone with her. We find no reasonable ground for supposing that any of the foregoing witnesses have confounded the Christmas of 1892 with that of 1891, as suggested.

The only direct attempt to break the force of all this corroborating evidence is by the charge that the date of this important drawing has been changed. It is charged that the date as it now appears has been written over an erasure, and both the original and an enlarged photographic copy have been offered for an inspection in support of the charge. If it could be shown that this date had been tampered with, the fact would discredit Northall's whole case, and for that reason and because the decision of the Commissioner is founded largely on that belief we have given the original and copy as close and careful scrutiny as possible with the aid of simple microscopes of considerable magnifying power.

No witnesses were called to inspect the writings and testify as to the results of the observation.

With the greatest distrust of our own capacity in the matter, we are nevertheless compelled to rely upon our own inspection and to form our own opinion unaided.

That the drawing and the date both may have been traced over erasures of other things is not at all improbable. There was some conflict between Bernardin and Northall in regard to the time and place that the drawing-paper itself had been obtained. Northall testified without reference to this charge, which had not then been made or intimated, that the drawing was made on a piece cut from a sheet of old paper that he had brought with him to Evansville from his Eastern home and had had sketches on it, which he "rubbed out" before putting this one on.

A pencil mark is pointed out just beneath—that is, a little lower down the page—a letter in the word "Decem-

ber," which the Commissioner thought was "the lower loop of a letter." This loop is plainly visible to the naked eye. In fact, it appears even fresher than the writing above it, and shows no sign of attempt at erasure. If it be part of an erasure, made for the purpose of falsifying the date, it seems strange that it should have been left when such great care was had in the complete erasure of the remainder. Conjecture founded on a circumstance of that kind is not sufficient to discredit the testimony of positive witnesses.

Our attention was called on the argument to another alleged indication of fraudulent alteration of the date, which seems not to have been suggested to the examiners or the Commissioner. It is claimed that the photographic copy discloses the figure " 3 " in proximity to the " 1 " in " 1891 " of the date. Our conclusion is, after examination, that this also is a mistaken conjecture. What would be the result, however, if it be conceded that there is a tracing of the figure " 3," as claimed ? The conjecture that the original date was 1893 instead of 1891 is inconsistent with all the established facts of the case and unreasonable in any view that may be taken of Northall's conduct.

If Northall did not invent the cap, as claimed, he must have conceived the idea of claiming Bernardin's invention as his own as early as April, 1892. The caps were first made soon after that date, and Northall had notice of Bernardin's application for the patent as early as the summer of 1892. The invention was subject of local newspaper comment in September, 1892. Now, if he prepared the drawings as part of his plan to defraud Bernardin, he surely would not have given it a date in the year 1893 or any other later than February, 1892, when, according to Bernardin, the knowledge of the invention was first communicated to him. Preparing it to antedate Bernardin, he would naturally have assigned his pretended invention to the year 1891. A change in the month of that year might

have become important, but not so with the year. After much consideration we can come to no other conclusion than that the appellant, Northall, is entitled to priority.

*The decision appealed from will therefore be reversed and the proceedings and decision certified to the Commissioners of the Patent Office, as provided by law. It is so ordered.*